IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| ELIZABETH CORLEY, individually and on behalf of all others similarly situated, | )<br>)<br>) |
| Plaintiff, | ) |
| v. | ) Case No. 1:24-cv-772-WO-JEP |
| NOVANT HEALTH, INC., | ) |
| Defendant. | ) |

## PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF FLSA SETTLEMENT

Plaintiff Elizabeth Corley, individually and on behalf of all Opt-In Plaintiffs and Putative Collective Members ("Plaintiff") files her Unopposed Motion for Preliminary Approval of FLSA Settlement and requests entry of an Order granting her motion, approving the form and content of the notice and claim forms, approving the notice distribution plan, and certifying the defined collective, for settlement purposes only.

### I. INTRODUCTION

Plaintiff seeks preliminary approval of the Fair Labor Standards Act ("FLSA") Settlement Agreement and Release ("Agreement") executed by Plaintiff and Defendant Novant Health, Inc. ("Novant" or "Defendant") (collectively, the "Parties"). The Agreement resolves the claims of Plaintiff and Opt-In Plaintiffs, and provides for the issuance of notice (Exhibits A-1 and A-2 to the Agreement) to the Putative Collective Members to advise them of their ability to opt-in to this litigation and participate in the settlement by returning a Claim

Page 1

Form (Exhibit B to the Agreement). As outlined below, the Court should grant preliminary approval to the settlement because it constitutes a reasonable resolution of a *bona fide* dispute under the FLSA. If the Court grants preliminary approval, the third-party claims administrator will distribute the notice and claim forms to the Putative Collective Members. Once the time for the Putative Collective Members to return the appropriate documents has run, the Parties will return to the Court for final approval of the settlement.

## II. FACTUAL BACKGROUND

On September 19, 2024, Plaintiff filed this Complaint, initiating this action on behalf of herself and all others similarly situated, seeking damages for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201–19 (the "Lawsuit"). *See* ECF No. 1. In general, Plaintiff alleged that Defendant violated the FLSA by utilizing a time-rounding system that systematically and regularly rounded in favor of Defendant, at the expense of Defendant's non-exempt hourly employees. Defendant denied the allegations.

Defendant filed its Original Answer on November 25, 2024 (ECF No. 30) and moved for judgment on the pleadings on Plaintiff's state law claims (ECF Nos. 31–32). On December 16, 2024, Plaintiff amended her complaint to remove her state law claims (ECF No. 38),[1] and the Parties jointly sought to stay this action to and toll the statute of limitations to allow them to attempt early resolution (ECF No. 37). The Parties conferred and agreed to participate in mediation with skilled wage and hour mediator, Dennis Clifford. To ensure the mediation was fruitful, Defendant produced extensive payroll and time record

---

[1] Defendant filed its answer to Plaintiff's amended complaint on December 30, 2024. *See* ECF No. 42.

information regarding the Putative Collective Members that (together with discussions with Plaintiff and Opt-In Plaintiffs) allowed Collective Counsel to create an informed damage model to aid in negotiating on behalf of the collective. Defendant also provided various information and data on its defenses, such as data on the net effect of the neutral rounding policy, and an analysis comparing security badge swipes with timeclock data.

On March 13, 2025, the Parties participated in a full-day in-person mediation. The Parties reached a resolution in principle to resolve the Litigation on behalf of Plaintiff Corley, the Opt-In Plaintiffs, and all Putative Collective Members ("Plaintiffs"). That agreement was subsequently reduced writing in the Agreement attached as Exhibit 1.

### III. ISSUES PRESENTED

Plaintiff now seeks this Court's preliminary approval of the Parties' Agreement and requests the authorization to send notice of the settlement to the Putative Collective Members, as contemplated in the Agreement. After the end of the notice period and once all Collective Members are appropriately before this Court, Plaintiff will seek final approval of the Agreement and request this Court to dismiss this lawsuit with prejudice.

### IV. TERMS OF SETTLEMENT

If approved by the Court, the Agreement will cover Plaintiff Corley, the current Opt-In Plaintiffs, and all Putative Collective Members who return their Claim Forms during the Notice Period. *See* Ex. 1, § 1.5. The Parties agree that the Agreement is fair and reasonable and warrants preliminary certification to advise the Collective Members of their opportunity to participate in the settlement of this Litigation.

### Settlement Amount

The Maximum Settlement Amount is $750,000.00, which is inclusive of the following: (i) the issuance of monetary payments to Collective Members, (ii) a Service Award to the Named Plaintiff, Elizabeth Corley (iii) payment for Attorneys' Fees and Costs (as approved by this Court and including those in connection with securing Court approval of the Settlement Agreement), and (iv) costs associated with settlement administration. *Id.*, at § 3.

### Individual Settlement Payments

The individual settlement payments are calculated proportionally based on the total number of weeks worked by each Putative Collective Member during the relevant statute of limitations during which the rounding practice was in effect.[2] Specifically, the Settlement Administrator will divide the Net Settlement Amount by the total number of workweeks for all Putative Collective Members to determine a weekly settlement value. *See id.* at § 3.4 Then, the Settlement Administrator will multiply each respective Putative Collective Member's number of weeks worked by the weekly settlement value to determine each Collective Member's *pro rata* share of the Net Settlement Amount. *Id.* The settlement amounts will be allocated fifty percent (50%) to back wages (paid via an IRS Form W-2) and fifty percent (50%) to liquidated damages (paid via IRS Form 1099). *Id.* at § 3.5.

### Enhancement Award

If approved by the Court, Defendant will pay $5,000.00 to Plaintiff Elizabeth Corley,

---

[2] Defendant ended the rounding practice at issue in this lawsuit in February of 2023.

Page 4

in addition to her settlement amount, for her service as the Representative Plaintiff and for executing a general release of claims. *Id.* at § 3.3.

### Attorneys' Fees and Costs

Defendants will pay up to 35.5%[3] of the Maximum Settlement Amount, or $265,000.00, to Collective Counsel for attorneys' fees incurred to date and attorneys' fees that Collective Counsel anticipates incurring as part of the settlement approval process. *Id.* at § 3.2. This amount is *inclusive* of all litigation fees and costs incurred (and to be incurred) during the litigation of this action.[4]

### Settlement Administration Costs

The Settlement Agreement also contemplates settlement administration costs to be paid from the Maximum Settlement Amount. These costs are estimated not to exceed $76,300.00 for the administration of this matter, including all necessary tax reporting and distribution of settlement proceeds.

### Release of Claims

By submitting a Claim Form and opting-in to this litigation, a Collective Member will receive consideration in the form of their *pro rata* settlement amount for the limited release of claims identified below.

> Named Plaintiff and each Collective Member, shall, on behalf of himself or herself and his or her respective current, former, and future heirs, spouses, executors, administrators, agents, and attorneys, be deemed to fully and finally release, remise, and finally and forever discharge the Released Parties (as defined

---

[3] Plaintiff requests 33.4% of the Maximum Settlement Amount as attorneys' fees, with the remainder constituting litigation costs and expenses.

[4] Collective Counsel will address the reasonableness of the requested in as part of the Motion for Final Approval of FLSA Settlement.

in Section 1.22) from all claims, rights, demands, liabilities, and causes of action that are alleged, or reasonably could have been alleged based on the facts asserted in the operative Complaint in the Litigation, including claims under the Fair Labor Standards Act ("FLSA"), claims under the theories of quantum meruit, unjust enrichment, conversion, breach of contract, theft of labor, and any other state, federal, or local law relating to the payment of wages, overtime, minimum wage, all claims for costs, attorneys' fees and/or interest, or any other benefits from September 19, 2021 through February 11, 2023.

*Id.* at § 4.1. Each Collective Member will receive a post-card with the Short-Form Notice (Ex. 1, at Ex. A-2) informing them of the settlement and providing a QR code (and a website address) where they can access the long-form notice (Ex. A-1) and Claim Form (Ex. B).[5] The Long-Form Notice and Claim Form set out the scope of the release. Plaintiff Corley has agreed to enter into a general release of claims. *See id.* at § 4.2. The requested Service Award provides additional consideration for the general release. *Id.*

### Notice Procedure

Within fourteen (14) days of the issuance of a Preliminary Approval Order, Defendant's Counsel will provide the Settlement Administrator, in electronic form, the following information: name, last known address, and social security number for each putative Collective Member ("Collective List"). The Settlement Administrator shall mail the Short-Form Notice to Collective Members within thirty (30) days of the Preliminary Approval Order ("Notice Mailing Deadline"). *Id.* at § 2.3. Collective Members will have forty-five (45) days to return their Claim Form after the Notice Mailing Deadline ("Claims Deadline"). *Id.* at § 2.4.

---

[5] The post-card notice process was used to reduce the costs of claims administration while still providing proper notice to Putative Collective Members.

### Final Approval Motion Timeline

After the expiration of the 45-day notice-period, the Settlement Administrator will provide a Counsel with a list of all Collective Members who timely returned their Claim Form. Within seventeen (17) days after the close of the notice period, Collective Counsel will file an unopposed Motion for Final Approval of FLSA Settlement. The motion seeking final approval will include the list of all Collective Members and will ask the Court to (a) enter judgment in accordance with this Agreement; (b) finally certify the FLSA collective action for settlement purposes; (c) finally approve the Settlement Agreement as final, fair, reasonable, adequate, and binding on all Collective Members; and (d) dismiss the Litigation with prejudice. *See id.* at §§ 2.5–2.6.

### Funding and Payment Timeline

Within ten (10) days of the issuance of an order approving the Agreement and dismissing the lawsuit with prejudice ("Effective Date"), Defendant will pay into the Qualified Settlement Fund ("QSF") the remaining portion of the Net Settlement Amount claimed by Collective Members during the 45-day notice period.[6] The Settlement Administrator will mail each Collective Member their settlement check, to the address identified in their claim forms, within twenty (20) days of the Effective Date. *Id.* at § 3.7. The Collective Members will then have sixty (60) days to cash their Settlement Checks, releasing their Released Claims and becoming Settlement Collective Members. *Id.* Any

---

[6] Defendant will fund the remaining portions of the Maximum Settlement Amount (attorneys' fees/Service Award/administration expenses) after receiving preliminary approval of the agreement, though no funds will issue from the QSF until after the Effective Date.

Page 7

portions of the Net Settlement Amount that remain unclaimed, or uncashed, after the conclusion of the 60-day period ("Acceptance Period") will be returned to Defendant. *Id.* The Settlement Administrator will be responsible for performing all tax reporting and withholding associated with the payments made pursuant to the Agreement. *Id.* at § 3.9.

## IV. ARGUMENT & AUTHORITY

Settlement is an important aspect of the judicial process that is treated with favor by the courts. *Hensley v. Alcon Labs., Inc.*, 277 F.3d 535, 540 (4th Cir. 2002). The settlement of FLSA claims is likewise encouraged, but requires Court approval to ensure that it is a fair and reasonable resolution of a *bona fide* dispute. *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1354-55 (11th Cir. 1982); *Taylor v. Progress Energy, Inc.*, 415 F.3d 364, 371 (4th Cir. 2005). "Courts in the Fourth Circuit generally employ a three-step process in deciding whether a settlement reflects a fair and reasonable resolution of a *bona fide* dispute over FLSA provisions." *Hopkins v. LRW Traffic Sys. LLC*, No. CV 1:23-2355-CDA, 2025 WL 1370643, at *2 (D. Md. May 9, 2025). First, the court must determine "whether there are FLSA issues actually in dispute[.]" *Id.* Second, the court must consider "the fairness and reasonableness of the settlement . . . ." *Id.* Third, the court must contemplate "the reasonableness of the attorneys' fees, if included in the agreement." *Id.*

In evaluating whether a settlement is reasonable, adequate, and fair, a court should consider: (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of class counsel and class members after receiving notice of the

Page 8

settlement whether expressed directly or through failure to object; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery. *Hopkins*, 2025 WL 1370643, at *3.

As a general rule, "[w]hen a settlement agreement has been the subject of arm's-length bargaining, with class counsel in a position to evaluate accurately the chances of the class prevailing if the case went to trial and where no objections are raised by any of the affected parties, there is a strong presumption in favor of the settlement." *Houston v. URS Corp.*, 2009 WL 2474055, at *5 (E.D. Va. Aug. 7, 2009). This is especially true when considered FLSA settlements, as opposed to Rule 23 class action settlement. In reviewing a Rule 23 settlement, the court must stringently safeguard the rights of absent class members. Here, because there are no absent class members (each Collective Member will affirmatively choose to join the litigation and participate in the settlement), the same due process concerns are not implicated.

Further, pursuant to authority from the M.D.N.C., the Parties present a "two step" FLSA settlement process to assuage any mootness concerns as raised in *Parra v. Quality Controlled Concrete*, 2015 WL 12750 (M.D.N.C. 2015).

### A. A *Bona Fide* Dispute Exists

To merit court approval, the settlement must resolve a bona fide dispute over FLSA provisions. *Lomascolo*, 2009 WL 3094955, at *16 (citing *Lynn's Food Stores*, 679 F.2d at 1355). Courts "consider the substantive allegations and determine whether factual issues, specific to these parties, are actually in dispute." *Id.* (quoting *Kapolka v. Anchor Drilling Fluids USA, LLC*, No. 18-01007, 2019 WL 5394751, at *2 (W.D. Pa. Oct. 22, 2019)). Disputes regarding

overtime pay owed to collective members are precisely the types of disputes the FLSA is designed to address. *Id.* A bona fide dispute clearly exists in this case.

Plaintiff alleged that Defendant violated the FLSA because it utilized a time rounding policy that was neither facially neutral nor neutral in application. In sum, Plaintiff maintained that when it came to rounding "the house [hospital] always wins."

Defendant stringently denies that it violated the FLSA and maintains that its time rounding policy was in compliance with federal and state wage and hour laws and was neutral on its face and in application. For example, during pre-mediation discovery, Defendant provided various reports and analysis supporting its arguments that its rounding practice was lawful. Defendant also provided pre-mediation discovery to support its position that its rounding practice was neutral on its face, as permitted by 29 CFR 785.48(b). Similarly, Defendant provided reports and analysis in support of its arguments that the rounding practice was likewise neutral in application. Moreover, Defendant argued that, in the absence of settlement, conditional certification would be difficult or impossible because a rounding practice like Defendant's former practice did not demonstrate any legal violation. In addition, Plaintiff carried the ultimate burden of demonstrating that Plaintiff and the Putative Collective Members were actually working during time that was rounded away to their detriment. *See, e.g., Mebane v. GKN Driveline North America, Inc.*, 2023 WL 3435007 at *4 ("[O]ne of the core issues with Plaintiffs' rounding claim is whether employees were engaging in compensable work during the time impacted by Defendant's rounding policy.") Defendant argued this deeper analysis would make demonstrating both conditional certification and ultimate liability difficult.

Page 10

Case 1:24-cv-00772-WO-JEP    Document 61    Filed 07/14/25    Page 10 of 18

If Plaintiff and the Putative Collective Members ultimately prevailed, Defendant would be faced with the prospect of a significant monetary verdict in favor of the named Plaintiff and the opt-in Collective, as well as the obligation to pay litigation fees and costs. If Defendant ultimately prevailed, Plaintiff faced dismissal of their claims and no recovery of any kind. Accordingly, both sides faced risk and the Court should conclude that a *bona fide* dispute between the Parties existed.

B. The Proposed Settlement Is Fair and Reasonable

Consideration of the relevant factors confirms that the proposed settlement is fair, reasonable, and adequate. The proposed settlement arises out of an action for overtime wages brought by Plaintiff against her former employer, Novant Health. During the litigation and settlement of this action, Plaintiff and Putative Collective Members were represented by counsel experienced in handling wage and hour class and collective actions. *See* Declaration of Clif Alexander, attached as Exhibit 2. There is a "strong presumption in favor of finding a settlement fair" that must be kept in mind in considering the various factors to be reviewed in making the determination of whether a settlement is fair, adequate and reasonable. *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08CV1310(AJT/JFA), 2009 WL 3094955, at *10 (E.D. Va. Sept. 28, 2009).

In evaluating the first factor, the amount of discovery completed supports approval of the settlement. "Parties may settle an FLSA case at an early stage provided that a plaintiff has had sufficient opportunity to evaluate the viability of [their] claims and the potential range of recovery." *Hackett v. ADF Rests. Invs.*, 259 F. Supp. 3d 360, 366 (D. Md. 2016). This standard is typically met when parties exchange records and engage in extensive settlement

negotiations for the purpose of avoiding the significant expense of future litigation. *See, e.g., Li v. Escape Nails & Spa, LLC*, No. DKC-23-1487, 2025 WL 460752, at *2 (D. Md. Feb. 11, 2025) (finding a settlement fair and reasonable where the parties "participated in 'extensive negotiations,'" had a "sufficient opportunity to obtain additional evidence through informal discovery," and agreed to settle for the purpose of avoiding "a lengthy and costly litigation process"); *Barnes v. Marriott Int'l, Inc.*, No. 20-3205-PX, 2021 WL 3112453, at *2 (D. Md. July 22, 2021) (finding a settlement fair and reasonable where the parties exchanged pay records and negotiated for weeks for the purpose of avoiding future litigation costs); *Villarroel v. Sri Siva Vishnu Temple*, No. GJH-I-T-2617, 2014 WL 7460967, at *2 (D. Md. Dec. 31, 2014) (finding settlement fair and reasonable where the parties exchanged pay records and held "significant negotiations" for the purpose of avoiding the "significant expenses" associated with "formal discovery, dispositive motions, and possibly trial"). A "sufficient exchange of relevant information" enables the parties to make knowing and informed decisions supporting a fair and reasonable settlement. *Wade v. CBH Health, LLC*, No. PX-20-3573, 2021 WL 8269082, at *3 (D. Md. Oct. 15, 2021); *Hackett,* 259 F. Supp. 3d at 366 ("[T]hough no formal discovery took place, . . . the informal exchange of information between [the] parties has allowed them to appropriately ascertain facts and evaluate the strength of their respective positions[.]").

Here, after engaging in initial motion practice regarding the applicability of the claims brought against Defendant, the Parties agreed early resolution (if possible) would be in the Parties' best interest. To that end, Defendant provided relevant information regarding its time-rounding policy as well as time and pay data applicable to the collective. Based on this

Page 12

information, together with extensive interviews with Plaintiff Corley and Opt-In Plaintiffs, Collective Counsel was able to create a damage model and negotiate Collective Members' claims in good faith. *See* Exhibit 2. During the mediation process, Defendant also provided its own analysis of the rounding practices at issue.

Looking to the second factor, the complexity, expense, and likely duration of this litigation also weighs heavily in favor of finding that the settlement is fair and reasonable. Should this matter have continued, the Parties would have engaged in significant motion practice on the issue of conditional certification. Understanding that the Fourth Circuit has not abandoned the lenient two-step conditional certification process, Plaintiff believes that it is likely this action would have been conditionally certified, and notice would have issued to the Collective Members.[7] The Parties then would have participated in formal discovery—exchanging written discovery and taking the depositions of the Parties and other individuals with relevant knowledge of the claims. After the close of discovery, it is likely both Parties would have filed dispositive motions. Defendant would have likely filed a decertification

---

[7] *See Andrews v. Bojangles Opco, LLC*, No. 3:23-CV-00593-RJC-DCK, 2024 WL 4154825, at *3 (W.D.N.C. Sept. 11, 2024) ("Because federal district courts in the Fourth Circuit, including this Court, have consistently followed the two-step approach, the Court declines to follow these other circuit courts, and some district courts, in enacting a more rigorous approach to conditional collective action certification."); *See, e.g., Hernandez v. KBR Servs., LLC*, No. 3:22-CV-530-HEH, 2023 WL 5181595, at *6 (E.D. Va. Aug. 11, 2023) ("[T]his Court sees no compelling reason to deviate from twenty years of established precedent . . . . In light of the refusal of multiple district courts within the Fourth Circuit to apply *Swales*, and in the absence of guidance from the Supreme Court or the Fourth Circuit on the issue, the Court will continue to apply the two-stage collective certification process.").

motion.[8] Following the resolution of those issues, the matter may have proceeded to an expensive, lengthy jury trial, with risks to both sides, as well as likely appeals and post-trial motions. The high-stakes nature of the rounding policy at issue almost assured a lengthy appellate battle if Plaintiff had prevailed. While numerous issues remain unresolved in this litigation, the discovery and investigations conducted thus far has enabled counsel for the Parties to assess the respective strengths and weaknesses of their case and reach the conclusion that settlement under the terms set forth herein is in the Parties' best interest.

The third and fourth factors—looking at whether arm's length negotiations occurred and at the skill and experience of counsel—also warrant a finding that the settlement is fair and reasonable. The settlement ultimately reached was the product of arm's-length negotiations between the Parties with the assistance of a mediator during a full-day in-person mediation.

Given these circumstances, a presumption of fairness should attach to the proposed settlement. *See Lomascolo*, 2009 WL 3094955, at *10 (noting that "[t]here is a strong presumption in favor of finding a settlement fair that must be kept in mind in considering the various factors to be reviewed in making the determination of whether a settlement is fair, adequate, and reasonable. . . . A court is entitled to rely on the judgment of experienced counsel for the parties in performing this balancing task and absent fraud, collusion or the like, a court should be hesitant to substitute its own judgment for that of counsel.") (citation and internal quotation marks omitted); *see also Lynn's Food Stores, Inc.*, 679 F.2d at 1354

---

[8] For example, in *Mebane v. GKN Driveline*, 2023 WL 3435007 (M.D.N.C. 2023) Judge Biggs decertified a FLSA collective involving rounding allegations.

Page 14

Case 1:24-cv-00772-WO-JEP    Document 61    Filed 07/14/25    Page 14 of 18

(recognizing that courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as an indication of fairness); *In re BankAmerica Corp. Securities Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) (recognizing that "[i]n evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and awards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery").

Collective Counsel are also experienced wage and hour litigators and have litigated 100s of FLSA cases on behalf of employees working in the healthcare field. *See* Exhibit 2. Collective Counsel have also handled time-rounding cases in numerous industries, including the healthcare industry, and are very familiar with the claims and defenses at issue. Based on their knowledge of the case and the applicable law, as well as records produced by Defendant and provided by Plaintiffs, Collective Counsel believes the settlement is fair, reasonable and adequate. "Although the Court is not bound by the counsel's opinion, their opinion is nonetheless entitled to great weight." *In re BankAmerica*, 210 F.R.D. at 702. Indeed, the final settlement amounts were the product of good-faith negotiations between the Parties and a full-day in-person mediation with a well-respected wage and hour mediator. The settlement amounts for each Putative Collective Member vary based on employment duration within the statute of limitations and each Putative Collective Member's payroll records.

Because notice has not yet issued to the Putative Collective Members, the fifth factor is best reviewed when the parties file for final approval.

Lastly, in analyzing the sixth factor, the Court should find that the settlement amount is reasonable. Based on the records provided and after extensive communications with Plaintiff Corley and Opt-In Plaintiffs regarding their experiences with Defendant's rounding policy, Collective Counsel believes that the Agreement provides for a strong recovery in this case. Exhibit 2. This reflects the reality that under the FLSA, Collective Members are only able to recover for their unpaid *overtime* compensation.[9] By Collective Counsel's calculation, the Maximum Settlement Amount provides for a recovery of 56.5% of the Putative Collective Members' available damages utilizing the FLSA's standard 2-year statute of limitations, liquidated.[10] After deductions from the Maximum Settlement Amount, the net amount each Collective Member is entitled to receive is approximately 60.8% of their 2-year unliquidated damages. This recovery, considered together with the very real hurdles Putative Collective Members and Plaintiff faced in establishing liability, provides an exceptional result. *See* Exhibit 2.

Plaintiff has established (at least preliminarily) that the Agreement provides for the fair, reasonable and adequate resolution of a *bona fide* dispute.

### C. Certification of the Proposed Collective Is Appropriate—for Settlement Purposes Only

Because the Parties have negotiated a settlement that applies to the collective, Plaintiff asks this Court to certify, for settlement purposes only, a collective action consisting of

---

[9] Although Plaintiff initially plead state-law claims to recover the unpaid straight time, Defendant highlighted the inherent deficiencies in those claims in its Motion for Judgment on the Pleadings. *See* ECF No. 32.

[10] Defendant changed its rounding practice in February 2023, making the third year of the FLSA statute of limitations largely moot.

Page 16

Eligible Employees, defined as:

> all current and formerly hourly-paid employees who worked for Defendant at any time from September 19, 2021 through February 11, 2023, who worked at least one week of at least 40 hours or more, and were subject to a rounding policy.

Ex. 1, § 1.11. In total, there are approximately 24,720 Eligible Employees/Putative Collective Members. For settlement purposes, they are similarly situated in that they were each paid an hourly wage, worked at least one overtime week within the relevant time period, and were subject to the complained of rounding policy.

## V. CONCLUSION

For the reasons stated above, Plaintiff moves this Court for entry of the proposed Order Preliminarily Approving Settlement Agreement, attached hereto as **Exhibit 3**, which: (i) grants this motion; (ii) preliminarily approves the Parties' Settlement Agreement; and (iii) approves the form and content of the Notices, (iv) approves the procedures for sending the Notice to the putative Collective Members; and (v) certifies the defined collective action, for settlement purposes only.

Dated: July 14, 2025					Respectfully submitted,

										**ANDERSON ALEXANDER, PLLC**

					By:		*/s/ Austin W. Anderson*
							**Clif Alexander** (admitted *pro hac vice*)
							Texas Bar No. 24064805
							clif@a2xlaw.com
							**Austin Anderson** (admitted *pro hac vice*)
							Texas Bar No. 24045189
							austin@a2xlaw.com
							**Carter T. Hastings** (admitted *pro hac vice*)
							Texas Bar No. 24101879
							carter@a2xlaw.com
							**ANDERSON ALEXANDER, PLLC**
							101 N. Shoreline Blvd, Suite 610
							Corpus Christi, Texas 78401
							Telephone: (361) 452-1279
							Facsimile: (361) 452-1284

							Attorneys in Charge for Plaintiff and Putative Collective/Class Members

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2025, I electronically filed a copy of the foregoing. Notice of this filing will be sent to all parties via the Court's electronic filing system. Parties may access the filing through the Court's system.

						*/s/ Austin Anderson*
						Austin Anderson